UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br> and <br> MARIA LOVELL, KIMBERLY SULLIVAN, and JEANNA DELA CRUZ, <br><br> Intervenors, <br> v. <br> UNITED AIRLINES, INC., <br><br> Defendant. | C06-1407Z <br><br> ORDER |

THIS MATTER comes before the Court for clarification as to the definition of "claimant" for purposes of this litigation. Plaintiff Equal Employment Opportunity Commission ("EEOC") initiated this action in September 2006 on behalf of charging parties Janet Lawhead, Maria Lovell, and Shelly Kia, as well as all similarly situated individuals. *See* Complaint (docket no. 1). Subsequently, EEOC and defendant United Airlines, Inc. ("United") narrowed the class of similarly situated individuals to "current and former"

ORDER - 1

Reservation Sales and Service Representatives ("RSSRs").[1] Stipulation at 2 (docket no. 58). In light of a recent decision by the Bankruptcy Court for the Northern District of Illinois, precluding EEOC from pursuing claims that arose before, but were not filed in the Bankruptcy Court prior to, confirmation of United's plan of reorganization under Chapter 11 of the Bankruptcy Code, <u>see</u> Exh. A to Suppl. Status Report (docket no. 199), United now advocates a more limited definition of "claimant," while both EEOC and Intervenors[2] seek, in different ways, to broaden the scope of this litigation. Having reviewed the parties' briefs, docket nos. 202, 203, and 204, and the balance of the record, the Court hereby ADOPTS the following definition, subject to modification after review of additional briefing, as explained further in this Order:

> For purposes of this litigation, "claimants" shall include Maria Lovell, Shelly Kia, and any other current or former United employee who holds or held the position of Reservation Sales and Service Representative ("RSSR") at the time he or she is or was unable due[3] to alleged disability to work a bid schedule of 30 or 40 hours per week and who was denied accommodation on or after January 20, 2006.

**Discussion**

**A.     "Equivalent" of RSSR**

Intervenors argue that "claimants" should encompass not only RSSRs, but also those who worked in "equivalent" positions. The Court has concluded on more than one occasion in this litigation that job classifications other than RSSR are not part of this case. <u>See</u> Minute

---

[1] In their stipulation and in various briefs, the parties referred to the position as "Reservation and Service and Sales Representative," but in later materials, accompanied by information maintained in United's database, the job classification was listed as "Reservation Sales and Service Representative." <u>See</u> Schoeneman Decl. at ¶ 3 & Exh. A (docket no. 181). The Court will use the title reflected in United's business records.

[2] Maria Lovell and Kimberly Sullivan have filed a Complaint in Intervention, docket no. 173, and Jeanna Dela Cruz has also been granted leave to intervene, <u>see</u> Minute Order (docket no. 195). The parties anticipate that additional individuals will seek leave to intervene, and the Court has set a deadline for any such motions. <u>See</u> Minute Order (docket no. 200). For purposes of this Order, however, the term "Intervenors" means Ms. Lovell, Ms. Sullivan, and Ms. Dela Cruz.

[3] Intervenors suggest using the word "because" instead of "due," but they provide no explanation, and the Court sees no difference between the terms in the context at issue.

ORDER - 2

Order (docket no. 100); Minute Order (docket no. 136); Order (docket no. 165); Order (docket no. 192). Moreover, consistent with United's previous representations, the Court views the job classification at issue broadly to include both non-supervisory and supervisory personnel, *i.e.*, both Reservation Sales and Service Representatives and Service Directors - Reservations. <u>See</u> Order at 4 (docket no. 192). Thus, the "or equivalent" language proposed by Intervenors is unnecessary, confusing, and contrary to prior rulings.

**B.      Denied Accommodation Before January 20, 2006**

United's plan of reorganization was confirmed on January 20, 2006.[4] <u>See</u> Mem. Dec. at 4, <u>In re UAL Corp.</u>, Case No. 02-B-48191 (Bankr. N.D. Ill. Nov. 24, 2009), Exh. A to Suppl. Status Report (docket no. 199) (citing Order dated Jan. 20, 2006, docket no. 14829) [hereinafter "Bankr. Nov. 2009 Dec."]; <u>see also</u> Second Amended Joint Plan of Reorganization, Exh. A to Order (docket no. 14829), <u>In re UAL Corp.</u>, Case No. 02-B-48191 (Bankr. N.D. Ill. Jan. 20, 2006) [hereinafter "Plan"]. As a result, United was relieved of "any debt that arose before the date of such confirmation," except as otherwise provided by statute or in the Plan. <u>See</u> 11 U.S.C. § 1141(d); <u>see also</u> 11 U.S.C. §§ 101(12) (debt means "liability on a claim") & 101(5) (claim means "right to payment, whether or not such right is reduced to judgment"). The Plan required that any Administrative Claims[5] be filed by the Administrative Claim Bar Date, which for Governmental Units like EEOC was 180 days after the Effective Date of the Plan. <u>See</u> Plan at Art. I, § D.5 & Art. XI, § D. The parties do

---

[4] United has advanced February 1, 2006, as the operative date of discharge. The plan of reorganization, however, expressly provides that discharge is "effective as of the Confirmation Date (but subject to the occurrence of the Effective Date)." Plan at Art. X, § B; <u>see also</u> 11 U.S.C. § 1141(d). Moreover, other courts considering claims against United have treated January 20, 2006, and not February 1, 2006, as the effective date of discharge. <u>Myers v. United Air Lines, Inc.</u>, 2009 WL 891751 (S.D. Ohio); <u>Humphrey-Baker v. United Airlines, Inc.</u>, 2008 WL 4661804 (C.D. Cal.). In light of the plain language of the Plan, and for the sake of uniformity, the Court will use January 20, 2006, as the date by which the validity of claims against United will be evaluated.

[5] Administrative Claims include claims for "the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services . . .) that (i) arise from a transaction with the Debtors, and (ii) benefit the Debtors in the operations of their business." Plan at Art. I, § D.4.

ORDER - 3

not dispute that EEOC failed to timely file Administrative Claims on behalf of any individuals other than Maria Lovell and Shelly Kia, and that EEOC's motion to file tardy or amended Administrative Claims was denied by the Bankruptcy Court. Thus, by operation of the Bankruptcy Code, as well as the Plan, all claims arising before confirmation that EEOC failed to timely assert were "disallowed automatically" and discharged. *See* Plan at Art. X, § B & Art. XI, § D.

The question now before the Court is when did the causes of action at issue arise. The basis for this lawsuit is United's treatment of RSSRs who are unable to work the requisite number of hours in a week. United considers 30 hours per week to be a part-time position, and 40 hours per week to be a full-time position. Under the applicable collective bargaining agreement ("CBA"), for an RSSR to switch from a part-time to a full-time position, or vice versa, a vacancy must exist, the employee must bid for it, and the employee must be the bidder with the most seniority. *See* EEOC Undisputed Fact No. 5 (docket no. 47-2); *see also* Schoeneman Dep. at 43:4-19, Exh. 13 to Hernandez Decl. (docket no. 47-6) (reduction to a part-time schedule outside the bidding process would violate the seniority system).

If an RSSR is unable for more than 90 days to work a complete bid schedule, whether 30 or 40 hours a week, the employee is placed on illness status until the employee's sick leave is exhausted. *See* Schoeneman Dep. at 30:18-31:8, 42:9-18, 71:17-22 (referring to the interim 90 days as the "transitional duty period" and indicating that employees may accrue up to 1,000 hours of sick leave); *see also* EEOC Undisputed Fact No. 20. Pursuant to the CBA, if an RSSR remains on illness status for more than 16 days after he or she no longer receives sick pay, then the employee is placed on extended illness status ("EIS"). *See* Schoeneman Dep. at 73:16-19; *see also* EEOC Undisputed Fact No. 21. While on EIS, an RSSR does not receive wages, but does qualify for benefits. Schoeneman Dep. at 42:19-22. If an RSSR stays on EIS for three years, then the employee is terminated. EEOC Undisputed Fact No. 22.

The parties appear to agree that United's discharge in bankruptcy bars the claims of RSSRs who were placed on EIS and terminated prior to confirmation of the Plan. The parties also agree that the claims of RSSRs who were placed on EIS after confirmation of the Plan remain viable. The parties dispute, however, the status of the claims of RSSRs who were placed on EIS before, and either remained on EIS or were terminated after, confirmation of the Plan. This point of contention involves two lines of cases that the Court has not yet reconciled, and the Court believes it will benefit from further briefing by the parties.

On the one hand, courts that have addressed the issue have uniformly held that a cause of action under the Americans with Disabilities Act ("ADA") for denial of accommodation accrues when the refusal to accommodate first occurs. *See Taylor v. AutoAlliance Int'l, Inc.*, 2009 WL 2591533 at *4 (E.D. Mich. 2009) (citing *Delaware State College v. Ricks*, 449 U.S. 250 (1980) (holding that discrimination claim arose when tenure was denied, and not later when, as a consequence, professor lost teaching position)); *see also Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551-52 (7th Cir. 1996) (holding that ADA claim accrued when the Board refused to offer the examination at issue in a manner accessible to the plaintiff, and not when the Board later denied the plaintiff's request for retesting or when the Board subsequently unfavorably resolved the plaintiff's internal appeal); *Hinch v. Duncan*, 941 F. Supp. 62 (W.D. Va. 1996) (ruling that claim arose prior to effective date of ADA, when employer gave the plaintiff an ultimatum of either resuming regular duties with accommodation or seeking disability retirement, and not when the plaintiff, after attempting to continue working, subsequently left job); *compare Martin v. Sw. Va. Gas Co.*, 135 F.3d 307 (4th Cir. 1998) (concluding that employer's refusal to consider the plaintiff's request for accommodation was merely a consequence of employer's previous decision to discharge the plaintiff and did not give rise to a separate cause of action accruing after effective date of ADA). These decisions are consistent with the retreat from the "continuing violations"

doctrine signaled by the Supreme Court in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), and by the Ninth Circuit in *Cherosky v. Henderson*, 330 F.3d 1243 (9th Cir. 2003).[6]

On the other hand, in seeming tension with these opinions, is *O'Loghlin v. County of Orange*, 229 F.3d 871 (9th Cir. 2000), in which the Ninth Circuit held that the plaintiff's ADA claim was not discharged even though her employer's initial refusal to accommodate her disability occurred before confirmation of the relevant plan of reorganization. In *O'Loghlin*, the plaintiff was a registered nurse who worked at a psychiatric emergency facility and who had been injured on two occasions by different patients, resulting in substantial impairment of her right arm. In June 1994, the plaintiff sought an accommodation of returning to work, but at a different facility. In February 1996, she sought the same accommodation. In October 1996, the plaintiff again sought to work at a different facility or, in the alternative, to return to the previous facility, but with a "team of people to protect her." *Id.* at 873. All three requests for accommodation were denied. The first two refusals to accommodate occurred before the employer's discharge in bankruptcy, while the third took place after confirmation of the employer's plan of reorganization.

In concluding that the plaintiff could proceed on her claim relating to the October 1996 denial, the Ninth Circuit reasoned that either (i) the third alleged ADA violation was a discrete act for which the plaintiff could recover damages beginning from the

---

[6] EEOC has attempted to characterize this case as involving a pattern or practice as to which the continuing violations doctrine still applies. The Court is not convinced. In *Cherosky*, the Ninth Circuit explained that an employer's persistent implementation of a discriminatory practice with respect to certain employees still constitutes a series of discrete acts or "individualized decisions," each of which must be challenged during the statutory limitations period. 330 F.3d at 1247. The Ninth Circuit observed that, "[i]f the mere existence of a policy is sufficient to constitute a continuing violation, it is difficult to conceive of a circumstance in which a plaintiff's claim of an unlawful employment policy could be untimely." *Id.* at 1248 (quoting *Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 533 (5th Cir. 1986) (alteration in original)). This case involves the same type of individualized application of policy that was at issue in *Cherosky*, and it is distinguishable from cases in which a pattern or practice affects people in an anonymous way. *See, e.g.*, *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 2009 WL 2982840 (N.D. Cal.) (challenging California Department of Transportation's failure to provide accessible sidewalks, cross-walks, pedestrian underpasses, and other public rights of way).

ORDER - 6

date her request for accommodation was denied, or (ii) the third refusal was part of a continuing ADA violation, under which theory the plaintiff could recover damages from the date of discharge. *Id.* at 876. In reaching this decision, the Ninth Circuit was guided by the principle that the "fresh start" permitted under the Bankruptcy Code should not and does not grant "a continuing licence to violate the law." *Id.* at 875. Thus, a debtor emerging from bankruptcy may not insulate itself from liability for post-discharge actions by attempting to link such conduct to pre-discharge violations. *Id.*

Under the line of cases holding that an ADA claim accrues when a refusal to accommodate first occurs, the claims of RSSRs who were placed on EIS before, and either remained on EIS or were terminated after, confirmation of the Plan would be barred by United's discharge in bankruptcy. Under *O'Loghlin*, however, a second or subsequent denial of accommodation following confirmation of the Plan might either give rise to a new ADA claim or keep alive an existing ADA claim and allow for post-discharge damages. If the reasoning of *O'Loghlin* were applied to this case, three categories of potential claimants would need to be considered, with perhaps varying results for the different scenarios: (i) RSSRs who were able to work 30 hours per week, but not 40 hours per week, were unable to secure a part-time position due to lack of vacancy and/or seniority, were placed on EIS before confirmation of the Plan, and took some action, *e.g.*, bid for a part-time position or requested accommodation, on or after January 20, 2006; (ii) RSSRs who were unable to work even a part-time, 30-hour schedule, were placed on EIS before confirmation of the Plan, and requested accommodation on or after January 20, 2006; and (iii) RSSRs who were unable to work their bid schedule, whether part-time or full-time, were placed on EIS before confirmation of the Plan, and did not, on or after January 20, 2006, engage in any steps to return to work at United.

The parties have not addressed whether any individuals belong to the first group; their arguments have focused primarily on the third group, which is discussed in the next section

ORDER - 7

of this Order. As to the second group, United has taken the position that a request post-discharge for the same accommodation denied pre-discharge does not constitute a new, actionable violation of the ADA. *See* United's Suppl. Brief at 6 n.2 (docket no. 202). EEOC and Intervenors have not discussed this issue. The Court makes no ruling at this time concerning whether the claims of individuals in the first two groups were discharged in bankruptcy.

C.     **Deterred From Requesting Accommodation**

With regard to the third group of individuals, whose causes of action accrued pre-discharge and would otherwise be precluded by confirmation of the Plan, EEOC has presented a theory that it hopes will salvage the claims of some of these individuals. EEOC, joined by Intervenors, contends that RSSRs who remained on EIS after confirmation of the Plan should not have been required, in order to preserve their ADA claims, to make the "futile gesture" of requesting reasonable accommodation after United's discharge in bankruptcy.[7] For support, EEOC has cited cases in which the plaintiffs were excused from initiating the interactive process envisioned by the ADA because the employers had foreclosed by policy or explicit action the accommodations the plaintiffs desired. *See Davoll v. Webb*, 194 F.3d 1116 (10th Cir. 1999); *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281 (7th Cir. 1996). These cases, however, do not deal with the effect of discharge in bankruptcy. Given the reasoning in *Soignier*, 92 F.3d at 552 ("An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination."), *Cherosky*, and *O'Loghlin*, the Court is inclined to hold that the failure to renew a request for accommodation on or after January 20, 2006, extinguished any ADA claim arising from pre-

---

[7] EEOC appears to also argue that it should be allowed to pursue claims on behalf of RSSRs who are or were working a full bid schedule, whether 30 or 40 hours a week, and never requested a reduced schedule as an accommodation because they believed doing so would be futile. The Court is persuaded that any such claims are not cognizable under the ADA. Continuing to work the full bid schedule, without disclosing any impairment, itself belies the need for accommodation. *See* 42 U.S.C. § 12112(b)(5)(A) (the duty to accommodate arises only when the "physical or mental limitations" at issue are "known").

ORDER - 8

discharge placement on EIS. The Court, however, will provide the parties an additional opportunity to brief the issue before it renders a final decision.

**D.    Claims Arising After September 1, 2008**

Intervenors have objected to limiting this litigation to claims arising before September 1, 2008, because doing so might foreclose claims not filed within 300 days after the events on which they are based. Intervenors have set forth two alternatives: (i) defining the scope of this litigation more broadly to incorporate claims arising before December 4, 2009, or (ii) tolling the statute of limitations for claims arising after September 1, 2008. As to the latter suggestion, Intervenors have provided no statutory or case citation indicating that the Court has such authority. With regard to the former proposal, the Court has concerns about the delay associated therewith, and believes that further briefing on this subject is needed. The Court therefore directs the parties to address the following issues in their supplemental briefing: (i) what dates other than September 1, 2008, if any, are suitable for limiting the scope of this litigation, and why (or why not); (ii) if claims arising after September 1, 2008, are included within the scope of this litigation, how long will the process of identifying potential claimants take; and (iii) should the Court bifurcate this case, with the first phase addressing claims arising on or before September 1, 2008, and the second phase, if necessary, involving claims arising after September 1, 2008, and before a date to be determined.

**E.    Claimant List and Briefing Schedule**

By December 31, 2009, EEOC shall provide to United a list of all claimants satisfying the definition adopted by the Court, as set forth in the preamble of this Order. By January 8, 2010, EEOC shall provide to United a separate list of any individuals falling within the first two groups outlined in Section B of this Order, namely any RSSRs who were placed on EIS before United's discharge in bankruptcy and who sought accommodation or otherwise attempted to return to work on or after January 20, 2006. Both lists shall be limited to

ORDER - 9

individuals whose claims arose on or before September 1, 2008. These lists shall be binding with respect to the claims that may be presented at trial, subject to amendment in the event that the Court modifies the definition of "claimant" and/or enlarges the scope of this litigation to claims arising after September 1, 2008.

By January 8, 2010, EEOC shall submit a supplemental brief, not to exceed ten (10) pages in length concerning the undecided issues identified in this Order. Intervenors may also submit a supplemental brief by January 8, 2010, not to exceed ten (10) pages in length. United shall submit a supplemental response, not to exceed ten (10) pages in length, by noon on January 19, 2010. EEOC and Intervenors may each file supplemental replies, not to exceed five (5) pages in length, by January 22, 2010. Nothing in this Order shall be construed as modifying the dates and deadlines set forth in the Minute Order dated December 7, 2009 (docket no. 200).

IT IS SO ORDERED.

The Clerk is directed to send a copy of this Order to all counsel of record.

DATED this 22nd day of December, 2009.

Thomas S. Zilly
United States District Judge