

**06-CV-01407-CNST**

1   WILLIAM R. TAMAYO -- #084965 (CA)
     JONATHAN T. PECK -- #12303 (VA)
2   EVANGELINA FIERRO HERNANDEZ -#166879 (CA)
     RAYMOND CHEUNG -- #176086 (CA)
3   MOLLY P. KÜÇÜK -- #35821 (WA)
     EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
4   San Francisco District Office
     350 The Embarcadero, Suite 500
5   San Francisco, California 94105
     Telephone:   (415) 625-5622
6   Facsimile:    (415) 625-5657

7   Attorneys for Plaintiff Equal Employment Opportunity Commission

8   KARI ERICKSON LEVINE
     SEYFARTH SHAW, LLP
9   560 Mission Street, Suite 3100
     San Francisco, CA 94105
10   Telephone:   (415) 544-1078
      Facsimile:    (415) 397-8549
11

12   Attorney for Defendant United Air Lines, Inc.

13

14              **UNITED STATES DISTRICT COURT**

15              **WESTERN DISTRICT OF WASHINGTON**

16   **EQUAL EMPLOYMENT OPPORTUNITY**   )   Civil Action No. C-06-01407 TSZ
     **COMMISSION,**   )
17                        )   **CONSENT DECREE**
              Plaintiff,   )
18                        )
     v.   )
19                        )
     **UNITED AIRLINES, INC.,**   )
20                        )
             Defendant.   )
21   ————————————————————)

22

23         Plaintiff Equal Employment Opportunity Commission ("Commission" or "EEOC") filed

24   this action under Title I of the Americans with Disabilities Act ("ADA") and Title I of the Civil

25   Rights Act of 1991 to correct alleged unlawful employment practices based on disability, and to

26   provide appropriate relief to Janet Lawhead, Maria Lovell, and Shelly Kia ("Charging Parties"),

27   and similarly situated disabled employees, who were employed by United Airlines as

28

    12938123v.1

1   Reservations Sales and Service Representatives ("RSSRs"), whom the Commission alleged were

2   and are adversely affected by such practices. The Commission alleged that Defendant United

3   Airlines, Inc., whose current correct name is United Air Lines, Inc. ("United"), subjected

4   Charging Parties, and similarly situated employees, to unlawful discrimination based on

5   disability in violation of the ADA by refusing to allow them to continue to work reduced hour

6   schedules as reasonable accommodation. Defendant has denied the above allegations and

7   claims. The Commission and United now seek to resolve this action (both Phase 1 and Phase 2

8   as defined by the Court in various Orders entered in the proceedings) as to each other and those

9   covered within the scope of EEOC's lawsuit in both phases of the action, through this Consent

10   Decree without further contested litigation.

11        The Court has reviewed this Consent Decree in light of the pleadings, the record herein,

12   and the applicable law, and now approves this Consent Decree.

13        THEREFORE IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

14   **GENERAL PROVISIONS**

15      1.     This Court has jurisdiction over the subject matter and the parties to this action.

16   This Court retains jurisdiction over this Consent Decree during its term.

17      2.     This Consent Decree constitutes a full and final resolution of all claims arising out

18   of EEOC Charges Filed by Kellie Florence (Charge No. 210A302831), Shelly Kia (Charge No.

19   378-2003-00480), Janet Lawhead (Charge No. 380-2003-02082), Maria Lovell (Charge No. 378-

20   2003-00342), Nada Lukovic (Charge No. 210A303038), Mary McInerney (Charge No.

21   210A302799), Alfreda Tillman (Charge Nos. 440-2006-06515 and 440-2007-04673), Katherine

22   Wong (Charge No. 37B-2010-00446), and a tenth charge filed by Commissioner Stuart J.

23   Ishimaru (Charge No. 550-2010-02136), and all ADA claims pled in the Complaint in this

24   action.

25      3.     This Consent Decree will become effective upon its entry by the Court.

26      4.     This Consent Decree is final and binding upon the parties to it, their successors

27   and assigns.

28

- 2 -

12938123v.1

1    5.    The Commission and United will each bear its own costs and attorneys' fees in
2  this action.

3    6.    United and its officers, agents, and employees understand and acknowledge that
4  the ADA strictly prohibits retaliation against any employee who has participated in any manner
5  in this lawsuit as well as retaliation against any RSSR based on his or her having requested a
6  reduced-hours schedule as reasonable accommodation under the ADA.  United will comply with
7  the non-retaliation requirements of the ADA and will not condone retaliation by its officers,
8  agents, or employees against any RSSR based on his or her having requested a reduced-hour
9  schedule as reasonable accommodation under the ADA.

10  **NON-ADMISSION OF LIABILITY**

11    7.    Nothing in this Consent Decree shall be interpreted or construed as an admission
12  of liability by United.  United specifically denies all of the Commission's allegations, and denies
13  that it is liable in any amount, under any theory.

14  **NO COURT FINDING AS TO LIABILITY**

15    8.    In agreeing to the terms of this Consent Decree, the Parties acknowledge that
16  neither this Court nor any other court has made any findings or expressed any opinion
17  concerning the merits, validity, or accuracy of any of the allegations, claims, or defenses asserted
18  in this action, except as may be reflected in the Court's written rulings on certain motions filed
19  by the Parties.

20  **CONSENT DECREE NOT ADMISSIBLE AS EVIDENCE**

21    9.    Nothing in this Consent Decree, nor any action taken in implementation thereof,
22  nor any statements, discussions, or communications, nor any materials prepared, exchanged,
23  issued, or used during the negotiations leading to this Consent Decree, are intended by the
24  Parties, nor shall any of the foregoing constitute, be introduced, be used, or be admissible in any
25  way in the litigation of this action, or in any other judicial, arbitral, administrative, investigative,
26  or other proceeding of whatever kind or nature as evidence of disability discrimination, or as
27  evidence of any violation of the ADA, the common law of any jurisdiction, any federal, state, or

28

- 3 -

12938123v.1

1   local law, statute, ordinance, regulation, rule, or executive order; or any obligation or duty at law
2   or in equity. Notwithstanding the foregoing, the Consent Decree may be used by any of the
3   parties in any proceeding in this Court to enforce or implement the Consent Decree or any orders
4   or judgments of this Court entered in conjunction with the Consent Decree.

5   **SPECIFIC INJUNCTIVE RELIEF**

6       **Non-Discrimination Policies**

7       10.     For those RSSRs who cannot work all of the hours required in the shift bid their
8   seniority can hold and thus request a reduction in the number of hours the RSSR is required to
9   work per week or per day as an accommodation to address long term or permanent medical
10  restrictions confirmed by United Medical, United agrees that it will in good faith consider such
11  requests on a case-by-case basis. In all such cases, United will engage in the interactive process,
12  taking into account the reasonableness of the request, the availability of other effective
13  accommodations, any formal objections that are actually asserted by the Union representing
14  RSSRs, and any undue hardship that may be imposed on United as a result of granting the
15  requested accommodation. United will permit reduced-hours schedules as accommodations for
16  qualified individuals with disabilities when and to the extent they constitute reasonable
17  accommodations and do not impose any undue hardship on the Company. However, United and
18  the EEOC agree that United, in its sole discretion, may offer other reasonable, effective
19  accommodations in lieu of reduced-hours schedules when such other accommodations are
20  available.

21      11.     United agrees that its 90-day Transitional Duty Policy will not act as a bar to the
22  allowance of such an accommodation.

23      12.     The parties agree that if the RSSR requesting a reduced-hours accommodation is
24  classified as a full-time United RSSR, United may require the RSSR, as a condition precedent to
25  the granting of any such accommodation, to submit an in-class transfer for and accept any open
26  part-time position at the employee's current work location which the RSSR can work. If there
27  are no current part-time positions open or being offered by the United, United nevertheless may

28

- 4 -

12938123v.1

1   require the RSSR to submit an in-class transfer for a part-time opening with United at the

2   employee's current work location.  The parties agree that the absence of open part-time positions

3   also will not act as a bar to the allowance of reduced-hours accommodations.

4        13.    The parties agree that any request for a permanent or long term reduced-hours

5   accommodation under which an RSSR would work fewer than 16 hours per week, the

6   contractual minimum schedule for part-time RSSRs under the collective bargaining agreement,

7   would be an unreasonable accommodation and would not be allowed.

8        14.    Within thirty (30) days of entry of this Consent Decree, United will issue a

9   memorandum setting forth the above policy, as described in Paragraphs 10 through 13 of this

10  Consent Decree.  This memorandum shall be in the form attached hereto as Exhibit A, and shall

11  be delivered to all United supervisors and managers in the RSSR departments, to all personnel of

12  United's medical department, and to all personnel in United's human resources department and

13  any other United employees involved in the reasonable accommodation of RSSR employees.

14       15.    Within thirty (30) business days after the entry of this Consent Decree, United

15  shall post copies of the memorandum referenced in Paragraph 14 on the bulletin boards at all

16  Contact Centers in the United States which are normally used by United for communicating with

17  its RSSR employees.  The memorandum shall remain posted for the duration of this Decree.

18  United shall take all reasonable steps to ensure that the posting is not altered, defaced or covered

19  by any other material.  Additionally, United shall mail a copy of the same memorandum to all

20  RSSR employees currently on Extended Illness Status.  United shall certify to the EEOC in

21  writing within sixty (60) business days after the effective date of the Decree that the

22  memorandum has been properly posted and mailed.

23  **Training**

24       16.    United will engage the services of a qualified outside consultant, knowledgeable

25  in the ADA,  to train all supervisors, managers, medical personnel, human resources personnel,

26  and any other United employees involved in administering the reasonable accommodation

27  process for the Company with respect to RSSRs, with an emphasis on definitions of disability

28

- 5 -

12938123v.1

1  under the ADA, the interactive accommodation process, the concept of undue hardship, and the
2  requirements of the Consent Decree in this regard.  Each session will be at least two hours in
3  length, and will be introduced by a senior member of United's management team.  The training
4  will be paid for by United, but the selection of the outside consultant will be subject to EEOC
5  review and approval, provided that approval will not be unreasonably withheld.  This training
6  will be conducted annually during the term of this Consent Decree and the first training shall be
7  completed by no later than six (6) months after the entry of this Consent Decree.

8  **Record Keeping and Reports**

9       17.    Upon issuance of the memorandum described in Paragraph 14, United will send a
10  copy of said document to counsel for the Commission attesting to compliance with said
11  Paragraph.

12      18.    Within thirty (30) days after completing each training session described in
13  Paragraph 16, United will mail to counsel for the Commission a report containing the date of
14  training, the name and position of the individual from senior management who introduced the
15  training, an outline of the training content, a list of all attendees, and copies of all materials
16  distributed at the training.

17      19.    Once every six (6) months, to be measured beginning on the date of entry of this
18  Consent Decree and continuing for the duration of the Consent Decree, United will notify
19  counsel for the Commission by letter or other written communication whether it has received any
20  requests from RSSRs for reduced hours accommodations during the preceding six months,
21  including a summary of each such request, and an explanation of how each such request was
22  resolved.

23  **MONETARY RELIEF**

24      20.    United will pay the gross sum of $600,000 as damages and in complete
25  satisfaction of the Commission's claims against United as set forth in its Complaint.  The parties
26  expressly agree that the $600,000 currently being held by the United States Government pursuant
27  to the terms of Paragraphs 9 and 10(a) of the February 23, 2010 Settlement Agreement between

28

- 6 -

12938123v.1

1    United and the United States of America (attached hereto as Exhibit B), may be applied as an

2    offset to satisfy in full the $600,000 payment obligation created by this Paragraph 20,

3    notwithstanding that some portion of the funds currently held by the United States Government

4    may be deducted by the United States General Services Administration and/or the United States

5    Department of Justice as a fee or assessment before the funds are released to United for

6    distribution to claimants. This sum, net of any such fees or assessments levied by the United

7    States General Services Administration and/or the United States Department of Justice, will be

8    allocated by the Commission, at its sole discretion, among the Charging Parties and similarly

9    situated RSSR employees. United shall not have any responsibility to distribute or pay any

10   money as a result of this action and Consent Decree except for the funds that are returned to it

11   from the General Services Administration, net of any fees retained by any agency of the United

12   States Government. Each of the individuals designated by the EEOC to receive any portion of

13   this sum shall be required to sign a full release and waiver of the ADA claims that were or could

14   have been brought in this case, in the form attached hereto as Exhibit C. Once completed and

15   upon notification to United by the Commission of the specific sum to be paid by check made out

16   directly to each individual designated by the Commission, United will mail checks in the amount

17   specified by the Commission to the individuals at the addresses provided by the Commission.

18   One-half of the amount allocated to each individual shall be deemed compensation for lost wages

19   and benefits. This amount will paid on a payroll check, subject to all applicable payroll

20   deductions and withholdings, and will be reported on IRS Form W-2. The other half shall be

21   deemed as payment for emotional distress and other non-wage damages. This amount will be

22   reported on IRS Form 1099 and will not be subject to payroll deductions and withholdings. In

23   addition a copy of the checks will be mailed to Evangelina Fierro Hernandez, Senior Trial

24   Attorney, EEOC 350 The Embarcadero, Suite 500, San Francisco, CA 94105. Said checks will

25   be sent by United within thirty (30) days of transmission of the names of the individuals to

26   whom the sum is being allocated, the address of each individual and the amount of allocation to

27   each individual. The parties expressly acknowledge and agree that, to the extent that any

28

- 7 -

12938123v.1

1  payments that may be required under this Paragraph 20 are payable to individuals whose claims

2  arguably constitute prepetition claims discharged in bankruptcy, such payments shall not be

3  deemed a waiver of United's position that prepetition claims that were not the subject of a timely

4  notice of claim are in fact extinguished and discharged by the bankruptcy court's January 2006

5  order confirming United's plan of reorganization.

6  **RETENTION OF JURISDICTION AND DURATION OF CONSENT DECREE**

7        This Consent Decree shall terminate three (3) years from date of entry by the Court,

8  unless the EEOC petitions this Court for an extension of the Decree because of non-compliance

9  by United.  If the EEOC asserts that United has not complied with this Decree, the EEOC shall

10 provide written notification of the alleged breach to United and will not petition the Court for

11 enforcement sooner than thirty (30) days after providing written notification.  The thirty day

12 period following written notice shall be used by the parties for good faith efforts to resolve the

13 issue. If the EEOC petitions the Court and the Court finds that United is not in substantial

14 compliance with the terms of the Decree, the Court may extend the Decree.

15       Respectfully submitted,

16

17 On Behalf of Plaintiff Equal Employment
   Opportunity Commission:

18

19 Dated:  December 16, 2010

20

21

22

23 WILLIAM R. TAMAYO
   Regional Attorney

24

25

26 JONATHAN T. PECK
   Supervisory Trial Attorney

27

28

- 8 -

1

2

3 EVANGELINA FIERRO HERNANDEZ
Senior Trial Attorney

4

5

6

7 RAYMOND CHEUNG
Senior Trial Attorney

8

9

10 MOLLY P. KUCUK
Trial Attorney

11                                      On Behalf of Defendant:

12

13                                      Dated:  December **15**, 2010

14

15                                      COUNSEL FOR UNITED AIR LINES,
                                        INC.
16                                      SEYFARTH SHAW, LLP

17

18                                      KARI ERICKSON LEVINE
                                        Attorney for United
19

20

21

22

23                          **ORDER**

24          It is so ordered.

25

26          Dated: December 17, 2010

27                                      U.S. District Court Judge

28
                                   - 9 -

12938123v 1

A

## Exhibit A

In general, United expects and requires all Reservations Sales and Service Representatives to be able and willing to work his or her full bid shift each week—40 hours for full-time RSSRs and up to 30 hours for part-time RSSRs. For those RSSRs who cannot work all of the hours required in the shift bid their seniority can hold and who thus request a reduction in the number of hours the RSSR is required to work per week or per day as an accommodation to address long term or permanent medical restrictions confirmed by United Medical, United will in good faith consider such requests on a case-by-case basis. In all such cases, United will engage in the interactive process, taking into account the reasonableness of the request, the availability of other effective accommodations, any formal objections that are actually asserted by the Union representing RSSRs, and any undue hardship that may be imposed on United as a result of granting the requested accommodation. United will permit reduced-hours schedules as accommodations for qualified individuals with disabilities when and to the extent they constitute reasonable accommodations and do not impose any undue hardship on the Company. However, United, in its sole discretion, may offer other reasonable, effective accommodations in lieu of reduced-hours schedules when such other accommodations are available.

United agrees that its 90-day Transitional Duty Policy will not act as a bar to the allowance of an accommodation in the form of a reduced-hours schedule.

If the RSSR requesting a reduced-hours accommodation is classified as a full-time United RSSR, United may require the RSSR, as a condition precedent to the granting of any such accommodation, to submit an in-class transfer for and to accept any open part-time position at the employee's current work location which the RSSR can work. If there are no current part-time positions open or being offered by the United, United nevertheless may require the RSSR to submit an in-class transfer for a part-time opening with United at the employee's current work location. The absence of open part-time positions, however, will not act as a bar to the allowance of a requested reduced-hours accommodation.

Notwithstanding the foregoing, any request for a permanent or long term reduced-hours accommodation under which an RSSR would work less than the contractual minimum schedule for part-time RSSRs under the collective bargaining agreement, will be considered an unreasonable accommodation and will not be allowed.

12916569v.1

## SETTLEMENT AGREEMENT

This settlement agreement (the "Agreement") is entered into by the United States of America, on behalf of the General Services Administration, the Department of Homeland Security and the Equal Employment Opportunity Commission (the "United States") and UAL Corporation, United Air Lines, Inc., and their affiliates, predecessors, and related corporations (collectively, "United"). United and the United States may be referred to collectively as the "Parties" or individually as a "Party."

## RECITALS

1.    United filed for Chapter 11 protection on December 9, 2002, and emerged through a confirmed Plan of Reorganization effective February 1, 2006.

2.    On about August 24, 2005, the General Services Administration ("GSA") filed its Fifth Amended Proof of Claim against United in the amount of $12,468,615.92 (the "GSA Claim").

3.    On about May 16, 2003, the Department of Homeland Security ("DHS") filed its First Amended Proof of Claim against United in the amount of $2,184,324.53 (the "DHS Penalty Claim"). The Parties agree that at least $659,000 of this claim may be subject to the result of certain litigation that was recently decided by the United States Court of Appeals for the Second Circuit and may be the subject of a petition for certiorari (the proceedings, including resulting appeals and any subsequent litigation, are defined as "DHS Litigation").

4.    On about May 25, 2004, DHS filed its Second Amended Proof of Claim against United in the Amount of $2,494,277.60 (the "DHS Customs Claim"). The parties agreed to reduce this claim to $230,634.18, and that amount has been satisfied by offset against funds held by DHS.

5.     GSA presently holds $9,934,927.12 of funds owed to United, as security on the aforementioned claims (the "Held Funds").

6.     DHS presently holds $551,721.11 of funds owed to United, as security on the aforementioned claims.

### AGREEMENTS

7.     The GSA Claim shall be settled and finally resolved in the amount of $5,992,696.13.   Within five days of the execution of this agreement, the United States and United shall cooperate to dismiss with prejudice the matter captioned General Services Administration v. United Air Lines, Inc., Case No. 10-00018 (Bankr. N. D  Ill.), with each side to bear its own costs.  The GSA Claim shall be satisfied in its entirety and in full by offset of $5,992,696.13 against the Held Funds.

8.     The DHS Penalty Claim shall be satisfied in its entirety and in full by:

A.  Offset of $551,721.11 being held by DHS as security described in Paragraph 6 and $973,603.42 of the Held Funds; and

B.  Upon conclusion of the DHS Litigation, offset of $659,000, to the extent that such offset is consistent with the outcome of the DHS Litigation.  If offset of $659,000 in favor of the United States is not consistent with the ultimate outcome of the DHS Litigation, the United States agrees to make reasonable efforts to return any such funds owed to United as a result of the DHS Litigation within 30 days after it becomes final

9.     The Equal Employment Opportunity Commission and United are presently involved in litigation in the United States District Court for the Western District of Washington, No. 06-01407 TSZ (the proceedings, including any resulting appeals, are defined as the "Seattle Litigation")  The EEOC has a filed administrative expense claim against United relating to the

2

Seattle Litigation in the amount of $600,000 (the "EEOC Administrative Expense Claim"). The United States shall be entitled to hold this $600,000 until the final disposition of the Seattle Litigation. The EEOC Administrative Expense Claim shall be satisfied by applying $600,000 of the Held Funds against any settlement or judgment in the Seattle Litigation, without otherwise limiting, diminishing or affecting the EEOC's or United's rights in the Seattle Litigation. Should the Seattle Litigation be resolved in United's favor in its entirety, the EEOC Administrative Expense Claim shall be withdrawn and the United States agrees to make reasonable efforts to transfer the remaining $600,000 to United within 30 days of a judgment in United's favor becoming final.

10.     The United States shall transfer to United the remainder of the Held Funds with the exception of: (a) $600,000 which will remain held on account of the EEOC Administrative Expense Claim; and (b) $659,000 which will remain held on account of the DHS Litigation. The amount of Held Funds that will be returned to United is estimated at $1,789,627.60. The United States agrees to make reasonable efforts to complete transfer of such amount to United within 30 days after execution of this agreement.

11.     The parties agree that, upon completion of the offsets set forth in paragraphs 7 through 9 above, the GSA Claim, the DHS Penalty Claim, the DHS Customs Claim and the EEOC Administrative Expense Claim shall be deemed satisfied and United shall have no further liability on, and shall be released from, any such claims. The Parties further agree that in exchange for the United States' agreement to the offsets and transfers set forth in paragraphs 7 through 10 herein, United shall release and hold harmless the United States for any claim relating to the Held Funds, including, without limitation, any claim for payment on interest that may have accrued with respect to claims for payment of the Held Funds

3

12.     This Agreement constitutes the entire, complete and integrated statement of each and every term and provision agreed to by and among the Parties and is not subject to any condition not provided for herein.  This Agreement supersedes any prior representations, promises, or warranties (oral or otherwise) made by any party, and no party shall be liable or bound to any other party for any prior representation, promise or warranty (oral or otherwise) except for those expressly set forth in this Agreement.  This Agreement shall not be modified in any respect except by a writing executed by the party to be charged hereto.

13.     Each Party warrants and represents that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  No Party is relying on any representation or statement made by any other Party or any person representing such other Party except for the representations and warranties expressly set forth in this Agreement.

14.     It is acknowledged that each Party, with the assistance of competent counsel, has participated in the drafting of this Agreement.  The Parties agree that this Agreement has been negotiated at arms length by parties of equal bargaining power, each of whom was represented by competent counsel of its own choosing.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

15     The Parties expressly declare and represent that they have read this Agreement and that they have consulted with their respective counsel regarding the meaning of the terms and conditions contained herein.  The Parties further expressly declare and represent that they fully understand the content and effect of this Agreement, that they approve and accept the terms

4

and conditions contained herein, and that they enter into this Agreement willingly, knowingly, and without compulsion.

16.   Each of the Parties declares and represents that he or she is competent to execute this instrument and that he or she is duly authorized, and has the full right and authority, to execute this Settlement Agreement on behalf of the Party for whom he or she is signing.

17.   This Agreement may be executed in counterparts. Facsimile signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Agreement.

IN WITNESS WHEREOF, this Agreement has been executed by the undersigned as of February ___ 2010.

UNITED

By: Ricks Frazier

Its: General Counsel

February 23, 2010

TONY WEST
Assistant Attorney General

PATRICK J. FITZGERALD
United States Attorney

J. CHRISTOPHER KOHN
Director
RUTH A. HARVEY
Assistant Director
MARGARET M. NEWELL
Trial Attorney
United States Department of Justice
Civil Division, Commercial Litigation Branch
1100 L Street, NW, Room 10014
Washington, D.C. 20005

ATTORNEYS FOR THE UNITED STATES OF
AMERICA, on behalf of the GENERAL

5

SERVICES ADMINISTRATION, the
DEPARTMENT OF HOMELAND SECURITY
and the EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

C

## EXHIBIT C

## RELEASE AGREEMENT

I, _____, for and in consideration of the rights granted to me in the Consent Decree entered by the Court in EEOC v. United Airlines, Inc., Case No. C-06-01407 TSZ, on behalf of myself, my heirs, assigns, executors, and agents, do hereby forever release and discharge United Airlines, Inc. ("United Airlines"), and all past and present parents, subsidiaries, shareholders, officers, agents, employees, and representatives of United Airlines, as well as all successors and assignees of United Airlines, from any and all claims and causes of action concerning denial of the opportunity to work a reduced schedule which I now have or ever have had under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. as of the date of this Release Agreement, including, as a result of or arising from the subject matter and claims which were or which could have been asserted in EEOC v. United Airlines, Inc., Case No. C-06-01407 TSZ.


_____          _____
        Date                          [name]